275 So.2d 92 (1973)
Hoyt FORBES et ux.
v.
COLUMBIA PULP & PAPER COMPANY, INC.
No. 46991.
Supreme Court of Mississippi.
March 19, 1973.
*93 Singley & Morgan, Columbia, for appellants.
Duff, Foxworth & McNeese, Columbia, for appellee.
GILLESPIE, Chief Justice:
Hoyt Forbes and his wife, Mrs. Hilda Nell T. Forbes (Forbes) filed a bill of complaint in the Chancery Court of Marion County against Columbia Pulp & Paper Company (Columbia) for the specific performance of a contract to convey land. After a full hearing, a decree was entered in favor of Columbia and Forbes appealed.
On July 3, 1965, Forbes conveyed to Columbia 160 acres of land situated in the Goss Community of Marion County, Mississippi. Simultaneously with the execution of said deed and as a part of the same transaction, Forbes and Columbia entered into a contract whereby under certain circumstances Columbia would reconvey said lands to Forbes. Omitting the formal parts, the contract provides as follows:
THAT, WHEREAS, the company is this day purchasing from the sellers certain lands situated in Marion County, Mississippi (description omitted)... .
which purchase is for industrial development either by the company or its assigns, or by Marion County, Mississippi in the form of an industrial park; and
WHEREAS, the total purchase price, including the amount paid for options thereon, to be paid by the company to the sellers therefor is the sum of $14,166.36; and
WHEREAS, the sellers are selling said property unto the company and its assigns for the express purpose of industrial development of said property or of other property in the general vicinity thereof; and
WHEREAS, the sellers, therefore, desire the right and privilege of re-purchasing said property for the re-payment by them to the company of the full consideration paid by the company to them in the event said property is not utilized for industrial purposes within a period of five (5) years from and after the date hereof:
NOW, THEREFORE, in consideration of the premises, the company and the sellers contract and agree with each other as follows, to-wit:
1. In the event the company, its assigns, or the Marion County, Mississippi Board of Supervisors do not institute the utilization of the property hereinabove described within five (5) years from the date thereof, for industrial purposes or as an industrial park, or a part thereof, that the company will execute its instrument re-conveying to the sellers the said property for and in consideration of the payment by the sellers to the company of the said sum of $14,166.36.

2. This instrument is nullified and of no force and effect from and after and upon the occurrence of either of the following circumstances, to wit:
(a) The incorporation of said property as a part of an industrial park by the Marion County, Mississippi Board of Supervisors; or
(b) The institution of actual construction of the integral parts and components of a manufacturing plant or paper mill on said property or on other property *94 located in general in the Goss community of Marion County, Mississippi with which said property will be used in some form therefor.
3. It being the intention of the sellers that if said property is not utilized for the purpose for which it is being sold within a period of five years (5) that the company, its successors and assigns, will re-convey said property to the sellers in the manner aforesaid ... . .
The facts as next stated are in the main taken from the testimony of Thomas L. Murphy, President of Columbia. Columbia is a wholly owned subsidiary of Whippany Paper Board Company, a New Jersey corporation. Whippany owns and operates five paper mills in other parts of the country. In 1964, Whippany employed Murphy to go to Columbia in Marion County to acquire land for the purpose of establishing thereon a paper mill. Murphy set up an office in Columbia, organized the corporation, and thereafter Columbia acquired 4442.2 acres of land in the Goss Community of Marion County. It was publicly announced that Columbia was going to construct a paper mill in Marion County. One of the tracts of land acquired by Columbia was the 160 acres belonging to Forbes. In addition to purchasing the land, Columbia made surveys to determine the availability of an adequate supply of water, made borings to determine the suitability of the soil for construction of a paper mill, and made other surveys. In acquiring the land and the other expenditures, Columbia spent about $1,300,000.
Sometime before July 3, 1970, which was the end of the five-year period provided in the aforementioned contract, Columbia built a road from the public highway to a part of the land it had acquired, cleared a 40-acre sawmill site, laid concrete foundations for the construction of the sawmill and placed the steel uprights on the concrete. The plans for the sawmill and the accompanying chipper mill were estimated to cost about $40,000. Mr. Murphy testified that this was Phase I of Columbia's planned construction on the 4442.2 acre tract. The sawmill is located three-fourths of a mile from the Forbes land. As of July 3, 1970, and at the time of the trial, no part of a paper mill had been constructed and the Forbes land was not being used for any purpose and would not be used in connection with the operation of the sawmill. The sawmill, construction of which began within the five-year period, will be a 350-horsepower mill costing $40,000. A paper mill would cost about $40,000,000. When the paper mill is built, the Forbes land would be used for effluent control. Mr. Murphy testified that the financial arrangements for constructing a paper mill had fallen through. While Columbia has plans to construct a paper mill, there is nothing definite as to when it will be constructed. Asked if he thought that the paper mill was going to be constructed in our lifetime, Mr. Murphy stated, "Well, if we live a normal lifetime, certainly."
Forbes made timely tender of the required amount of money and requested Columbia to reconvey the property. Columbia refused. Forbes then brought this suit.
The first question for our decision is whether within the meaning of numbered paragraph 2(a) of the contract the Forbes property was incorporated as a part of an industrial park by the Marion County Board of Supervisors. The chancellor found that this part of the contract had been complied with and therefore the repurchase provisions of the contract were nullified. The proof showed that the Marion County Board of Supervisors adopted a resolution for the purpose of establishing "a standard industrial park" in accordance with Mississippi Code Annotated section 8940-01 et seq. (1960). Hearings were held by the Agricultural and Industrial Board on the application of the Marion County Board of Supervisors and it was found by the Agricultural and Industrial Board that the only intended use of the proposed industrial park was the location *95 of a single paper type industry. The application was denied and no certificate of public convenience and necessity was issued to the Marion County Board of Supervisors for the acquisition and development of an industrial park. Thereafter, another resolution was adopted by the Marion County Board of Supervisors but no action has been taken thereon by the Agricultural and Industrial Board. The chancellor found that since the Marion County Board of Supervisors did everything within its power to create an industrial park and was in good faith in doing so that the provisions of paragraph 2(a) of the contract were complied with. There is no basis for such a construction of the contract. The contract did not contemplate or state that an attempt to create or establish an industrial park would nullify the repurchase provisions of the contract, and the court erred in so holding.
The next question is whether numbered paragraph 2(b) of the contract was complied with by Columbia prior to July 3, 1970, by beginning the actual construction of the sawmill and chipper mill already mentioned. The interpretation of this provision of the contract must be made in the light of all the terms of the contract. Home Mutual Fire Ins. Co. v. Pittman, 111 Miss. 420, 71 So. 739 (1916). The contract stated that the Forbes were selling their property to Columbia for the express purpose of industrial development of said property or of other property in the vicinity thereof. Paragraph 1 provided that if the property was not utilized within five years for industrial purposes or as an industrial park Columbia would reconvey the property for the amount therein stated. Paragraph 3 again stated that it was the intention of the Forbes that if said property were not utilized for the purpose for which it was being sold within five years that the property would be reconveyed. It is clear that the intention of the parties as expressly stated was that industrial use of the property must be made within five years either by incorporation into an industrial park or the use thereof in connection with a manufacturing plant, actual construction of the integral parts and components of which must begin before July 3, 1970.
The beginning of construction of a sawmill which would in no way require the use of the Forbes property did not nullify the reconveyance obligations of Columbia. Paragraph 2(b) requires the following acts on the part of Columbia in order to nullify the reconveyance provisions of the contract: (1) The institution of actual construction of the integral parts and components (2) of a manufacturing plant or paper mill (3) on said property or other property located in the Goss Community (4) with which said property will be used in some form therefor. The proof shows without dispute from the testimony of Mr. Murphy that the manufacturing plant (the sawmill and chipper mill) will not make use of the Forbes property. It is argued that requirement 4 contemplates future use of the property, and so long as any manufacturing plant, such as a sawmill, was begun prior to July 3, 1970, and the Forbes property would be used in some manner with some future construction that the requirements of this paragraph are met. The terms of the contract do not permit this interpretation. Such interpretation is inconsistent with the stated purposes of the contract. The mere possibility that a pulp or paper mill which will require the use of the Forbes property for effluent control may be constructed sometime in the future does not satisfy the requirements of the contract.
We are also of the opinion that the "manufacturing plant or paper mill" meant a paper or pulp mill under the ejusdem generis rule, which means that where there are both general and special provisions in a contract relating to the same thing, the special provisions control. Cole v. McDonald, 236 Miss. 168, 109 So.2d 628 (1959); 17 Am.Jur.2d, Contracts § 270, p. 677 (1964). The ejusdem generis rule is particularly applicable to this contract because *96 the proof offered by Columbia conclusively shows that the only industrial plant contemplated by Columbia that would require the use of the Forbes property is a paper mill. Therefore, for this additional reason we conclude that the chancellor erred in finding that the repurchase agreement was nullified by paragraph 2(b) of the contract.
The judgment of the chancery court is reversed and judgment is entered here requiring Columbia to convey to the Forbes the property involved in this case within sixty days after the mandate of this Court is filed in the trial court, upon the payment of the purchase price provided in the contract.
Reversed and judgment here.
PATTERSON, SMITH, ROBERTSON and SUGG, JJ., concur.