# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00098-SCT

*ANNYE C. ANDERSON, AS PERSONAL
REPRESENTATIVE AND LEGATEE OF THE
ESTATE OF CARRIE H. THOMPSON, DECEASED;
AND ROBERT M. HARRIS, LEGATEE OF THE
ESTATE OF CARRIE H. THOMPSON, DECEASED.*

*v.*

*STEPHEN C. LAVERE; DELTA HAZE
CORPORATION, A NEVADA CORPORATION; AND
SONY MUSIC ENTERTAINMENT, INC., A
DELAWARE CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/7/2001 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES W. CRAIG |
| | REUBEN V. ANDERSON |
| | DEBRA M. BROWN |
| ATTORNEYS FOR APPELLEES: | RICHARD A. OAKES |
| | ANTHONY KORNARENS |
| | ANITA K. MODAK-TRURAN |
| | W. SCOTT WELCH, III |
| | JAMES W. KITCHENS |
| | MARGARET P. ELLIS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 10/16/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE McRAE, P.J., EASLEY AND CARLSON, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

¶1.     On March 21, 2000, Annye C. Anderson (Anderson), as personal representative and legatee of the Estate of Carrie H. Thompson, deceased, (Thompson Estate), and Robert M. Harris (Harris), as legatee of the Thompson Estate, filed suit against Claud Johnson (Claud), Stephen C. LaVere (LaVere), Delta Haze Corporation (Delta) and Sony Music Entertainment, Inc. (Sony) in the Circuit Court of the First Judicial District of Hinds County, Mississippi.

¶2.     The complaint alleged, among other things, conversion, fraud, misrepresentation and breach of contract, concerning use of photographs of Robert L. Johnson (Johnson) and Carrie H. Thompson's (Thompson) 1974 contract between herself and LaVere which assigned to LaVere the right to use the photographs of Johnson and Johnson's music for commercial use in exchange for a percentage of the royalties.

¶3.     The Circuit Court of Hinds County granted the defendants' motion to transfer venue ordering that the case be transferred to the Circuit Courts of Leflore County or Copiah County, Mississippi.  Circuit Court Judge W. Swan Yerger allowed Anderson and Harris to choose between Copiah County and Leflore County.  Anderson and Harris chose the Circuit Court of Leflore County (trial court).[1]

¶4.     LaVere, Delta and Sony moved for dismissal or, in the alternative, for summary judgment based on, among other things, the defense of res judicata.  The trial court granted the motion to dismiss the complaint as to fewer than all the defendants on behalf of LaVere, Delta

_____

[1] Claud was the only resident of Mississippi, residing in Copiah County, Mississippi.  Anderson was a resident of Massachusetts.  Harris was a resident of Maryland.  LaVere was a resident of California. Delta was a foreign corporation organized under the laws of Nevada.  Sony was a foreign corporation organized under the laws of Delaware.  The Estate of Robert L. Johnson (Johnson Estate) was probated in Leflore County, Mississippi.

and Sony. The trial court entered a final judgment pursuant to M.R.C.P. 54(b). Anderson and Harris now appeal to this Court.

**FACTS**

¶5.    Johnson was an accomplished musician, singer and songwriter specializing in "the blues." Johnson died in Leflore County, Mississippi, on August 16, 1938, without leaving a will. Only two photographs of Johnson are known to exist, one known as the "studio portrait" made for Johnson by Hooks Brothers Studios in Memphis, Tennessee, and the other referred to as "the dime store portrait" or "the photo booth self portrait" taken by Johnson himself.

¶6.    A history of all the prior litigation and appeals which involves the parties in this appeal is important to fully understand the trial court's ruling. At the time of Johnson's death, no estate was ever probated as Johnson's estate was essentially worthless. Thompson, Johnson's half-sister, held herself out to be Johnson's sole living heir. Thompson took possession of Johnson's photographs. On November 20, 1974, Thompson contracted with LaVere to assign all of her purported rights to copyrights of Johnson's work, photographs and any other material concerning Johnson that she might have. In return, LaVere was to pay Thompson fifty percent of all royalties collected by him as a result of his efforts to capitalize off of Johnson. *Matter of Estate of Johnson*, 705 So.2d 819, 820 (Miss. 1996).

¶7.    Before Thompson's death, Anderson had been granted irrevocable power of attorney to act for Thompson in all her affairs. *Id*. On February, 20, 1983, Thompson died testate in Maryland. Thompson's half-sister, Anderson, was appointed as the testatrix's personal representative. Thompson devised all her property rights, including "all rights and claims I may

have as a result of an agreement dated November 20, 1974..." to Anderson and Thompson's grandson, Harris.

¶8. On June 1, 1989, Anderson filed her initial petition to open Johnson's estate in the Chancery Court of Leflore County, Mississippi. *Id*. Anderson was appointed administratrix until Willis B. Brumfield (Brumfield), chancery clerk of Leflore County, was appointed as successor administrator on May 28, 1991, due to objections filed to have Anderson removed. *Id*. at 821.[2]

¶9. On May 31, 1991, an Order Authorizing Payment of Royalties to The Administrator was entered accepting the funds tendered by LaVere. The order states, in part:

> "[a]ccordingly, the Court hereby orders that the funds tendered by Steve LaVere, both now and hereafter, until further orders of the Court, are received by the Administrator without in any manner admitting or denying the validity of the above referenced contract and without determination of any rights or obligations the Estate of Robert L. Johnson may have arising out of the works of the late Robert L. Johnson."

The order further states:

> "Mr. Steve LaVere is hereby authorized and empowered to pay Mr. Willis Brumfield, Administrator of the Estate of Robert L. Johnson, the sum of $46,968.39, along with all future sums which may come into his possession which are to be paid as royalties under the terms of the 1974 contract with Carrie Thompson. It is ordered that these funds be held by the Administrator until such time as a final determination is made as to the proper disposition of these funds."

The final disposition of these funds was made in the March 22, 1999, Order of Final Discharge, when they were ordered delivered to Claud.

---

[2] The chancellor removed Anderson and appointed Brumfield in order to have an independent administrator who did not present a potential claim to the Johnson Estate.

¶10.    On August 29, 1991, LaVere and the Johnson Estate entered into a contract appointing LaVere as the Johnson Estate's agent.

¶11.    In Brumfield's affidavit attached to LaVere's and Delta's rebuttal to Anderson's and Harris's opposition to the motion to dismiss, or alternatively for summary judgment, Brumfield stated that prior to entering into the contract, LaVere and Brumfield met to discuss issues.  During the course of the meeting, LaVere and Brumfield discussed the attempt by Thompson to rescind the contract.  LaVere informed Brumfield that he had received legal advice to the effect that Thompson could not unilaterally rescind the agreement and, therefore, he had continued to fulfill his obligations under it.

¶12.    On September 9, 1991, Brumfield announced, by way of a Letter of Introduction, LaVere's appointment as agent for the estate.  This letter also acknowledged LaVere's ownership of the copyrights to Johnson's music and photographs.  In Brumfield's affidavit he states that during his tenure as administrator, Anderson and Harris never challenged LaVere's and Delta's ownership of the copyrights to the photographs or claims that the licensing money paid to the Johnson Estate did not belong to the Johnson Estate.

¶13.    On October 9, 1991, LaVere submitted his Second Accounting of Royalty Receipts and Expenses.  This accounting was approved by the Leflore County Chancery Court on October 10, 1991.[3]

¶14.    Subsequently, LaVere assigned the copyrights to the photographs and musical compositions to Delta.  Brumfield, in a subsequent Letter of Introduction and Authority,

---

[3] LaVere made subsequent accountings to the Leflore County Chancery Court.  However, those accountings are not part of the record.

acknowledged the assignment of the copyrights to Delta. LaVere was the agent for Delta and continued to act as the agent for the Johnson estate.

¶15. Anderson and Harris were aware that LaVere, and thereafter Delta beginning with his first accounting and in all accountings thereafter, claimed ownership of the copyrights to Johnson's photographs and paid royalties to the Johnson estate for the licensing of Johnson's photographs.[4] Anderson and Harris admit they did not challenge LaVere nor Delta's ownership of the copyrights to the photographs or the estate's right to a percentage of the royalties. They assert this because they "considered themselves [SIC] the sole heirs of the Estate of Robert Johnson," who would eventually inherit what was being paid to the Estate.

¶16. On August 30, 1994, Anderson filed her Third Inventory and Accounting. In this accounting and inventory, Anderson again identified the photographs of Johnson and the copyrights thereto as being "potential" assets of the estate of Robert Johnson. On February 19, 1992, Claud filed his entry of appearance in the Johnson Estate. *Id*. Brumfield filed a petition to determine heirship. In his answer to the petition to determine heirship, Claud alleged that he was Johnson's illegitimate son and sole heir. *Id.*

¶17. The chancery court dismissed Claud's claim as time-barred pursuant to Miss. Code Ann. §91-1-15 (d) (ii). *Id*. This Court, however, reversed that decision stating:

> In this case, Ms. Anderson, the former administratrix, took a position in the estate of Robert L. Johnson which was beneficial to herself and detrimental to Claud. Her failure to act to properly open the estate in 1982, while she was acting as *administratrix de son tort*, operates as a waiver of the statutory bar against Claud. Our Mississippi courts have long followed the maxim of equity

---

[4] The Judgment Approving Second Accounting of Royalty Receipts and Expenses by Stephen C. LaVere reflects the licensing income from the commercial use of the photographs.

6

that no person bound to act for another can act for herself. From 1974, until the Chancellor removed Ms. Anderson as administratrix in 1991, Mrs. Thompson and Ms. Anderson were under a duty to act for the rightful heirs of Robert L. Johnson, not for themselves. Thus, under these facts, equity will waive the statutory bar of Section 91-1-15 and open the window to the extent that Claud shall be allowed to prosecute his claim to be the illegitimate son of Robert L. Johnson, deceased, to the same extent as though he had filed his claim between July 1, 1981, and July 1, 1984

705 So.2d at 823.

¶18.    Upon remand, the Chancery Court of Leflore County conducted a hearing on the merits of Claud's heirship petition on October 12-15, 1998, before rendering a decision. Claud was adjudicated to be Johnson's biological son. Anderson and Harris appealed the adjudication that Claud was Johnson's biological son. *In re Estate of Johnson*, 767 So.2d 181, 182 (Miss. 2000). This Court affirmed the chancellor's finding that Claud was Johnson's biological son. *Id*. at 187.

¶19.    On October 15, 1998, Claud was adjudicated to be Johnson's lawful heir. Anderson and Harris filed their notice of appeal on October 23, 1998. Anderson and Harris moved on October 23, 1998, for the chancery court to stay the judgment to prevent the distribution of estate assets until after their appeal had been decided by this Court and waive the requirement of supersedeas bond.

¶20.    On December 2, 1998, Claud petitioned the chancery court to distribute all assets of the Johnson estate. Anderson and Harris filed a Motion for Stay of Proceedings Pending Supreme Court Review of Motion to Waive Supersedeas Bond on December 18, 1998. On February 11, 1999, Brumfield filed his Final Accounting and Petition for Discharge.

¶21. On February 23, 1999, Anderson filed her Motion to Compensate Former Administrator Annye C. Anderson. In this motion, Anderson alleged that the 1974 agreement between LaVere and Thompson had been rescinded. However, the motion did not ask the Court to make a finding to that effect. Nonetheless, Anderson asked to be paid an amount equivalent to 8% of the funds paid to the estate by LaVere under the 1974 agreement with Thompson.

¶22. On February 26, 1999, a partial distribution of estate assets in the amount of $300,000 was made to Claud. This amount represented the 1998 income of the estate.

¶23. On March 22, 1999, the chancellor in his Order of Final Discharge, decreed that the assets of the Johnson Estate should be distributed to Claud, specifically stating therein that "all contract rights of the Estate are hereby declared to be vested in Claud L. Johnson, the biological son and sole heir at law of Robert L. Johnson, Deceased."

¶24. The chancellor also awarded $15,000 to Anderson as requested in her February 23, 1999, seeking compensation for her services rendered as administratrix.

¶25. On April 22, 1999, Anderson and Harris filed a notice of appeal as to the Order of Final Discharge.

¶26. On November 29, 1999, Anderson's and Harris's appeal of the March 22, 1999, Order of Final Discharge was dismissed by this Court as untimely filed.

¶27. The suit filed by Anderson and Harris which is the subject of this appeal was filed on March 21, 2000, well after the Chancery Court of Leflore County had adjudicated Claud to be Johnson's biological son and sole heir. Anderson and Harris seek various counts of alleged damages as result of not receiving royalties from the use of Johnson's photographs and music.

¶28. The trial court properly granted summary judgment in favor of LaVere, Delta and Sony, dismissing the complaint with prejudice. The trial court entered a final judgment pursuant to M.R.C.P. 54(b).

¶29. The sole issue necessary for this Court's consideration is:

> **I.** **Whether the trial court was correct in finding that the doctrine of res judicata operated to prevent relitigation of Anderson's and Harris's claims against LaVere, Delta and Sony.**

## DISCUSSION

## I. Res Judicata

¶30. In their answer to the suit filed by Anderson and Harris, Claud, LaVere, Delta and Sony raised the affirmative defense that Anderson's and Harris's claims are barred by the doctrine of res judicata. Sony joined LaVere's and Delta's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, or in the Alternative, for Summary Judgment. One of the grounds argued in support of the motion to dismiss was that Anderson's and Harris's claims were barred by the doctrine of res judicata. The trial court granted the motion to dismiss as to LaVere, Delta and Sony, based on res judicata.

¶31. Res judicata is an affirmative defense that ordinarily must be pled in order to preserve the point for appellate review. **Wholey v. Cal-Maine Foods, Inc.**, 530 So.2d 136, 138 (Miss. 1988). *See also **Johnson v. Howell***, 592 So.2d 998, 1001 (Miss. 1991).

¶32. In **Johnson**, this Court explained the application of the doctrine of res judicata, stating:

> We have stated the rule of *res judicata* as, "[a] final judgment on the merits of an action precludes the parties and their privies from relitigating claims that were or could have been raised in that action." **Walton v. Bourgeois**, 512 So.2d 698, 701 (Miss. 1987) (citing **Dunaway v. W. H. Hopper and Associates, Inc.**, 422 So.2d 749, 751 (Miss. 1982)). *See also*, **Estate of Smiley**, 530 So.2d 18,

9

23 (Miss. 1988); *Estate of Stutts v. Stutts*, 529 So.2d 177, 180 (Miss. 1988); *Mississippi Employment Security Commission v. Georgia-Pacific Corp.*, 394 So.2d 299, 301 (Miss. 1981; *Cowan v. Gulf City Fisheries, Inc.*, 381 So.2d 158, 162 (Miss. 1980); *Standard Oil Co. v. Howell*, 360 So.2d 1200, 1202 (Miss. 1978). Thus, *res judicata* applies to bar an action where the parties or their privies have previously litigated a legal claim to a final judgment. Further, where *res judicata* lies, it bars litigation in the second action "of all ground for, or defenses to , recovery that were available to the parties regardless of whether they were asserted or determined in the prior proceeding." *Dunaway* at 751 (quoting *Key v. Wise*, 629 F.2d 1049, 1063 (5th Cir. 1980) reh. denied, 645 F.2d 72 (5th Cir. 1981), cert. denied, 454 U.S. 1103, 102 S.Ct. 682, 70 L.Ed.2d 647 (1981) (quoting *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979).

*Johnson*, 592 So.2d at 1002.

¶33. The trial court correctly determined that res judicata is applicable to the case sub judice. In *Estate of Anderson v. Deposit Guaranty National Bank*, 674 So.2d 1254, 1256 (Miss. 1996), this Court state the four identities that must be present for the doctrine of res judicata to apply:

(1) identity of the subject matter, (2) identity of the cause of action, (3) identity of the parties, and (4) identity of the quality or character of a person against whom a complaint is made.

*Aetna Casualty and Surety Co. v. Berry*, 669 So.2d 56, 66-67 (Miss. 1996); *Dunaway v. W.H. Hopper & Assocs.*, 422 So.2d 749, 751 (Miss. 1982).

The Court further held that, "[t]he absence of any one of the elements is fatal to the defense of res judicata." 674 So.2d at 1256. The facts clearly prove that the four identities referenced by the trial court which must be present before res judicata will be applied to bar an action; subject matter; cause of action; parties; and quality or character of the defendant, were met.

¶34. The subject matter involves the ownership of the copyrights to the photographs of Johnson. Anderson and Harris were parties to the Johnson Estate proceedings in the Chancery

10

Court of Leflore County where Claud was determined to be Johnson's biological son, as well as the proceedings determining Claud to be Johnson's lawful heir vesting all contractual rights of the Johnson Estate in Claud. LaVere and Delta owned the legal title to the copyrights of the photographs of Johnson to use for commercial gain during the Johnson Estate proceedings and continue to operate in the same capacity. LaVere's ownership of the copyrights of the photographs of Johnson and subsequent assignment of those rights to Delta, and their contractual obligation to pay the Johnson Estate half of the royalties earned from licensing of the photographs, created a fiduciary relationship with the Johnson Estate and its administrator which carried over to Claud once he was adjudicated to be Johnson's lawful heir.

¶35. Since Claud was previously adjudicated to be Johnson's biological son and his lawful heir to the detriment of Anderson and Harris, Anderson and Harris are barred by the doctrine of res judicata from now relitigating the 1974 contract between Thompson and LaVere and the ownership of the photographs of Johnson and his music.

**CONCLUSION**

¶36. Anderson's and Harris's claims as barred by the doctrine of res judicata. Therefore, the judgment of the Circuit Court of Leflore County is affirmed.

¶37. **AFFIRMED**.

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB AND CARLSON, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**

11
